UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

─────────────────────────────────────────────

UNITED STATES OF AMERICA,

        Plaintiff,

  v.                                         Case No. 11-cr-63-pp

DONALD GILLESPIE,

        Defendant.

─────────────────────────────────────────────

**ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S LETTER MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE (DKT. NO. 375)**

─────────────────────────────────────────────

On May 24, 2011, the defendant (represented by counsel) signed a plea agreement admitting his participation in a conspiracy involving 280 to 840 grams of crack cocaine. Dkt. No. 73.[1] On January 9, 2012, Judge Charles N. Clevert, Jr. sentenced the defendant to serve 120 months (ten years) in custody followed by five years of supervised release. Dkt. Nos. 139, 140. The defendant began serving his five-year term of supervised release on August 14, 2020. Dkt. No. 372.

On August 30, 2021—just over a year into his five-year term of supervised release—the defendant filed a motion asking the court for early termination of that supervised release. Dkt. No. 375. He explained that while he was in custody, he learned the trade of electrician, and that since his release he has received a journeyman electrician's license in Minnesota and

───────────────

[1] At one point, the defendant attempted to withdraw that plea, dkt. no. 94, but after changing counsel, retracted that request, dkt. no. 124.

1

Wisconsin. Id. at 1. The defendant told the court that currently he is living in Houston, Texas; while he said that he was working toward his master electrician's license for that state and hadn't yet passed the test, id., he since has sent the court a document from the Texas Department of Licensing and Regulation indicating that he appears to have earned the license, dkt. no. 377. He is working for a local electrical worker's union, making $27.62 an hour. Dkt. No. 375.

The defendant also told the court that he had surrounded himself with positive people, that he'd had only one police contact (being pulled over, with no citation given), he had not had to see his supervising agent more than five times and that he was no longer the kind of person who looked for "the easy way out." Id. For these reasons, he asked the court to terminate his supervised release early. Id.

The court starts by applauding the defendant. As the government commented in its submission, the defendant appears to have used his time in custody wisely, unlike many defendants the court sees. He learned a difficult trade, one that already has enabled him to make a good living. He has earned a license that is difficult to acquire—a master electrician's license—making him a specialist in his field. This is an impressive achievement. The defendant has every right to be proud of himself. And the fact that he is working a legitimate job with good pay is a 180º change from what he was doing years ago when he was indicted.

The defendant's choice to surround himself with people who are healthy for him is also very positive, as is the fact that he has stayed out of trouble in the year he has been on supervision. Again, the court applauds the defendant's choices and his exercise of good judgment.

Under 18 U.S.C. §3583(e)(1), a district court judge has the discretion to terminate someone's supervised release early if the person has completed at least one year of supervision, the government has had a chance to weigh in and the court finds that the early termination is in the interests of justice based on the defendant's conduct and the 18 U.S.C. §3553(a) sentencing factors. The defendant has served at least one year of his supervised release term and the government has had the chance to weigh in. The defendant's conduct, thus far, has been impressive. But the court is not comfortable that terminating the defendant's supervised release just over one year into a five-year supervised release sentence is in the interests of justice. The defendant committed a serious offense. He and several others conspired to distribute cocaine base— which originally one of the co-conspirators obtained in powder form and cooked into crack—and powder to customers in Racine, and a search warrant produced guns in his residence. Dkt. No. 136 at ¶¶10-18. At the relatively young age of twenty-three, the defendant had accrued several juvenile adjudications. The longest he'd held down a job at that time was four months, working as a crew member at Hardee's. Id. at ¶63.

The court does not raise these points to criticize the defendant. It reiterates that the defendant's behavior since he has been on supervised

release is a 180º change from the events described above. The court raises these points for two reasons. First, changing one's life isn't always easy and it often requires a little help from others. The defendant has made big strides toward a positive change—earning a trade, moving away from Racine, getting a great job, staying out of trouble. The court would like to see him spend some more time supported by the safety net of supervision, to make sure he has all the coping skills he needs to continue his excellent progress. It took him years to get to the point he had reached when he was indicted. It may take a bit more than a year to settle into his new, positive habits.

Second, just like the prison time Judge Clevert imposed was part of the defendant's punishment for his crimes, supervised release also partly serves as a form of punishment. Few people want to be on supervision. But it is part of the process of paying one's debt to society. Judge Clevert imposed a five-year term of supervised release. If the defendant continues on this positive path that he has begun to travel, the court does not necessarily think that the defendant needs to serve five years of supervision. But terminating his supervised release after only fourteen months would understate the seriousness of the defendant's offenses and the sentence that Judge Clevert fashioned.

The government points out that simply following the rules of supervision is not necessarily sufficient to justify a court exercising its discretion to terminate supervised release early. The court expects people to stay out of trouble while on supervised release, and to follow the rules (even though there are many people who do not meet that expectation). It is also true that the

4

defendant has not identified any way that being on supervised release keeps him from making progress toward his goals.

Given the positive steps the defendant has taken in the past year, the court is more than willing to consider early termination of the defendant's supervised release at some point. It simply is not comfortable doing so this early in his release term. The court will deny the defendant's motion, but will deny it "without prejudice," which means that the defendant may again ask for early termination sometime in the future.

The court **DENIES WITHOUT PREJUDICE** the defendant's letter motion for early termination of supervised release. Dkt. No. 375.

Dated in Milwaukee, Wisconsin this 15th day of October, 2021.

        **BY THE COURT:**

        _____
        **HON. PAMELA PEPPER**
        **Chief United States District Judge**